# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

MATTHEW MARTINEZ *et al.*,

    Petitioners,

vs.                                                                Civ. No. 20-1309 WJ/CG

CORECIVIC *et al.*,

    Respondents.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Petitioners' Class Action Petition for Writ of Habeas Corpus and Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2241, 42 U.S.C. § 1983 (Doc. 1) ("Petition").[1] Essentially, Petitioners, all of whom are either pretrial or post-conviction detainees awaiting sentencing at Cibola County Correction Center ("CCCC"), seek "immediate release" from custody through the guise of a doctrine called "enlargement," which would "enlarge" the petitioners' custodial status by releasing them from CCCC and placing them in home confinement. Pet. ¶¶ 6, 195. Petitioners seek this extraordinary relief, arguing that "CCCC's continued detention of [Petitioners] under current conditions and population levels puts them at a high risk of exposure [to COVID-19] that could result in serious illness, severe harm, or death, in violation of the pretrial [Petitioners'] Fifth and Fourteenth Amendment right to due process and the post-conviction [Petitioners'] Fifth Amendment rights and/or their Eighth Amendment right to be free from cruel and

---

[1] The Petition is fully briefed and ready for judgment. *See* Docs. 11 (Federal Respondents' Response in Opposition to Petition for Writ of Habeas Corpus (Doc. 10) ("Response")); 14 (CoreCivic's Notice of Joinder to the Federal Respondents' Response in Opposition to Petition for Habeas Corpus); 19 (Petitioners' Reply to Respondents' Response to Petitioners' Class Action Petition for Writ of Habeas Corpus and Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2241, 42 U.S.C. § 1983) ("Reply")); 21 (Petitioners' notice of briefing complete regarding Petition); 26 (Joint Status Report) ("Briefing is complete as to the [Petition] and the parties are awaiting a decision . . . .").

1

unusual punishment." *Id*. ¶ 135.

Apparently, Petitioners believe that the risks of contracting COVID-19 at CCCC are so grave that, notwithstanding the seriousness of the charges brought against them, or of the charges of conviction, they are entitled to a total release, without due consideration of the risks that they themselves pose to the community. Petitioners also believe that they are entitled to receive a standard of care and protection against coronavirus that far exceeds what current guidance states is actually necessary. *Compare* Pet. ¶ 195 ("Clean and disinfect frequently touched surfaces with disinfectant . . . every two hours during waking hours, and at least once during the night") with *CDC Guidance: Correctional and Detention Facilities* ("Cleaning high touch surfaces and shared objects once a day is usually enough to sufficiently remove [the] virus . . . ."), available at https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/index.html.[2]

---

[2] The Petition is riddled with citations to March and April 2020 articles regarding testing, transmission, the effects of the virus on the body, and the risks associated with correction facilities. *See, e.g.*, Pet. nn. 1–15, 35, 39. Unfortunately, these articles are as obsolete as they are irrelevant, i.e., CCCC now conducts mass testing and follows CDC guidelines, it has since been proven that the risk of COVID-19 infection through contact with contaminated surfaces or objects is low, the CDC knows who is "at risk," and the CDC now has accurate mortality rates. *See, e.g., Science Brief: SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments* (updated April 5, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/more/science-and-research/surface-transmission.html; *People with Certain Medical Conditions* (updated May 13, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *Mortality Risk of COVID-19*, (updated daily), available at https://ourworldindata.org/mortality-risk-covid; *John Hopkins Mortality Analysis* (updated daily), available at https://coronavirus.jhu.edu/data/mortality.

Additionally, the Petition is an ill-fated attempt to bootstrap the uncertainty that surrounded the initial panic of March 2020, the lack of data-driven recommendations, *see America's Covid Groupthink Functioned Like China's Repression* (published on June 7, 2021) (in the wake of the Fauci email dump, discussing science oppression during the early stages of the virus), available at https://www.wsj.com/articles/americas-covid-groupthink-functioned-like-chinas-repression-11623085417, and the initial lack of testing capacity/precautionary measures, into a favorable and ill-informed judgment fifteen months later. The Court firmly rejects this litigation strategy. As of the date of filing of this Memorandum Opinion and Order, the COVID-19 vaccine has been and continues to be available to the prison population, cleaning supplies and masks are readily available, and CCCC follows CDC and New Mexico Department of Health guidance. Moreover, when Petitioners peer over the prison walls, Petitioners will see that schools have resumed in-person learning, hospitals and nursing homes now allow visitors, and most states are 100% open. *See List of Coronavirus-Related Restrictions in Every State* (updated June 7, 2021), available at https://www.aarp.org/politics-society/government-elections/info-2020/coronavirus-state-restrictions.html; *see also Reopening Plans and Mask Mandates for All 50 States* (updated June 8, 2021), available at https://www.nytimes.com/interactive/2020/us/states-

Respondents counter, arguing that (1) the claims are moot because Petitioners have already contracted and recovered from COVID-19, (2) the Court lacks habeas jurisdiction, (3) the requested relief is barred by the Prison Litigation Reform Act ("PLRA"), (4) conventional remedies exist under the Bail Reform Act and First Step Act, (5) Petitioners cannot succeed on the merits of a § 1983 claim because they cannot establish objective unreasonableness nor deliberate indifference, and (6) Petitioners fail to properly name a *Bivens* defendant and the facts alleged cannot sustain that cause of action. *See* Resp., *passim*. The Court agrees with Respondents' justiciability argument, albeit under the separate doctrine of standing. Accordingly, the Petition shall be dismissed with prejudice.

I.  **BACKGROUND**[3]

Because the Court need not reach the merits of Petitioners' claims, it only includes the background facts necessary to resolve the threshold jurisdictional question.

A. **The Petitioners**

Petitioners bring this "representative habeas action pursuant to 28 U.S.C. § 2241 and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and on behalf of all persons similarly situated." Pet. ¶ 30. Petitioners "seek to represent a class consisting of all individuals currently in custody at CCCC or who will become in custody at CCCC

---

reopen-map-coronavirus.html. Simply stated, while approximately 600,000 deaths in the United States have been attributed to COVID-19 since the inception of the pandemic, as of the date of entry of this opinion COVID-19 is no longer the threat that Petitioners make it out to be.

[3] Defendants, in part, attack the propriety of this Court's subject matter jurisdiction over the Petition (Article III standing). The Court, therefore, will consider in its discretion the attached declarations and corresponding exhibits in addition to the allegations of the Petition. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) ("[A] party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."); *see also Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("Motions to dismiss for lack of standing are "properly brought pursuant to rule 12(b)(1), because standing is a jurisdictional matter.").

3

during [] the COVID-19 pandemic (the "Class")." *Id*. The proposed Class is divided into two groups: pretrial detainees and post-conviction prisoners. *Id*. ¶¶ 172–194.

The seven named Petitioners include:

1. **Matthew Martinez**

Martinez pleaded guilty to distribution of 500 grams and more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). *See* Dkt. No. 1:18-cr-04178-JCH, Docs. 25 (Consent to Plea before Magistrate Judge) (Clerk's Minutes for Plea Hearing held on 8/7/2019).[4] Martinez tested positive for COVID-19 on December 3, 2020, but remained asymptomatic except for a short period when he reported loss of smell and taste. Resp., Ex. 2 (Declaration of K. Ivens, M.D.) ¶¶ 33-34. On May 11, 2021, Martinez received a sentence of time served. *See* Dkt. No. 1:18-cr-04178-JCH.[5]

2. **Siraj Wahhaj**

A federal grand jury charged Wahhaj with the following: (1) conspiracy to provide material support to terrorists, (2) providing material support to terrorists, (3) conspiracy to murder an officer or employee of the United States, (4) conspiracy to commit an offense against the United States, and (5) possessing a firearm while unlawfully in the United States. *See* Dkt. No. 1:18-cr-02945-

---

[4] The Court takes judicial notice of all criminal documents filed with this district court against the named Petitioners. *See United States v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (exercising discretion "to take judicial notice of publicly-filed records in [this] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand") (citation omitted).

[5] Petitioners' counsel failed to supplement the record with dispositive events that have occurred since the commencement of this action, like a time-served sentence for Mr. Martinez. Petitioners' counsel also failed to notify the Court that several of the Petitioners requested COVID-19 related release in their respective criminal matters prior to this action. This Court takes exception to counsel's failure to avail the Court of all relevant information, especially when counsel represents some of the Petitioners in their ongoing criminal matters. Moreover, this case is not the first time representations or disclosures to the court by Petitioners' counsel have been called into question. *See generally Cassidy v. United States*, 2016 WL 10267672 (D.N.M. May 19, 2016).

WJ-2, Doc. 85 (superseding indictment).

On September 12, 2018, Magistrate Judge Khalsa ordered Wahhaj detained, finding clear and convincing evidence that no conditions of release would reasonably assure his appearance. *Id*., Doc. 36. Specifically, after considering the 18 U.S.C. § 3142(g) factors, Judge Khalsa found detention appropriate for the following reasons: weight of evidence against the defendant is strong; subject to lengthy period of incarceration if convicted; history of violence or use of weapons; lack of stable employment; lack of stable residence; and lack of significant community or family ties to this district. *Id*. at 2–3. On August 5, 2020, Wahhaj filed an emergency motion for reconsideration of the order of detention under the Bail Reform Act. *Id*., Doc. 244. Judge Khalsa denied that motion, finding that *Wahhaj had already tested positive for COVID-19* on August 11, 2020, and had no underlying health conditions putting him at risk of serious complications, nor did he allege any such complications. *Id*., Doc. 256 at 5–6 (order dated September 24, 2020). Furthermore, Magistrate Judge Khalsa rejected Wahhaj's proposal to be released to a halfway house with pretrial supervision and a GPS monitor, since it would not "keep the community safe, reduce his risk of flight, *or even improve his chances of avoiding COVID-19 reinfection*." *Id*. at 6 (emphasis added).

The only COVID-19 grievances that Wahhaj has filed at CCCC relate to restrictions on use of the law library due to social distancing requirements. Resp., Ex. 1 (Declaration of Warden Jackson) ¶¶ 113, 115. These library-related grievances were not resolved in his favor, and he did not appeal them. *Id*.

    3. **Matthew Von Rotz**

Von Rotz pleaded guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. Dkt. No. 1:19-cr-04274-WJ, Doc. 47 (Plea

5

Agreement).  On January 8, 2021, this Court imposed on Von Rotz a 60-month term of incarceration which was considerably less than the guideline range of 77 to 96 months.  *Id*., Docs. 48, 55.  Von Rotz is currently serving that term in the custody of the Federal Bureau of Prisons ("BOP") at FCI Phoenix.[6]

Magistrate Judge Ritter ordered Von Rotz detained pending trial based on clear and convincing evidence that no conditions of release would reasonably assure Von Rotz's appearance. *Id*., Doc. 11. Judge Ritter found that the following reasons for detention applied: weight of evidence against the defendant is strong; prior criminal history; history of violence or use of weapons; prior failure to appear in court as ordered; prior attempt(s) to evade law enforcement; and prior violations of probation, parole, or supervised release. *Id*. at 2–3. On March 9, 2020, Von Rotz moved for reconsideration, arguing that he could not get proper medical treatment at CCCC for injuries sustained during his arrest. *Id.*, Doc. 29. Judge Ritter rejected the motion, concluding that Von Rotz "failed to present new information that would have a material bearing on his detention or release," including "grounds relating to risk of flight." *Id*., Doc. 32 at 3.

With respect to COVID-19, *Von Rotz tested positive in July 2020 and recovered without complications*. Pet., Ex. 5. Nevertheless, in November 2020 Von Rotz submitted a COVID-19 grievance, requesting release due to alleged underlying conditions, which he argued made him vulnerable to the virus. Jackson Decl. ¶ 127. The grievance was not resolved in Von Rotz's favor. *Id*. Von Rotz appealed, and on January 4, 2021, then CCCC Warden Rosa affirmed. *Id*. Von Rotz also filed a grievance in December 2020 that related to alleged lack of chemicals and cleaners available at CCCC, which was not resolved in his favor nor appealed. *Id*. ¶ 130.

---

[6] *See* https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results.

On June 9, 2021, this Court denied Von Rotz's request for compassionate release under 18 U.S.C. §3582(c)(1)(A), finding it "particularly significant that Defendant does not appear to be concerned about contracting COVID-19 again or having complications from said contraction—as evidenced by his refusal to receive his COVID-19 vaccination." Dkt. No. 1:19-cr-04274-WJ, Doc. 59-2 at 1 (vaccine refusal).

4. **Jeff Simsovic**

Simsovic pleaded guilty to (1) being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2) making a false statement in a passport application in violation of 18 U.S.C. § 1542. Dkt. No. 1:19-cr-01206-KWR, Doc. 54 (Plea Agreement). Simsovic received a 37-month term of incarceration. *Id.*, Doc. 57 (clerk's minutes for sentencing hearing held on 10/9/2020). Simsovic is currently serving that term in the custody of the BOP at FCI La Tuna, located in Anthony, Texas. *See* https://www.bop.gov/inmateloc/.

Magistrate Judge Briones ordered Simsovic detained pending trial for the following reasons: weight of evidence against the defendant is strong; subject to lengthy period of incarceration if convicted; prior criminal history; history of violence or use of weapons; history of alcohol or substance abuse; lack of stable employment; lack of significant community or family ties to this district; significant family or other ties outside the United States; prior failure to appear in court as ordered; and background information unknown or unverified. *Id.* at 2-3. On April 14, 2020, Simsovic moved to modify the detention order under the Bail Reform Act due to his alleged increased risk from COVID-19. *Id.*, Doc. 28. Judge Briones denied that motion because Simsovic failed to proffer any CDC-recognized risk factors and could not show that his proposal for release to a halfway house or home imprisonment mitigated his substantial flight risk. *Id.*, Doc. 32 at 3.

5. **Howard Allen**

7

On July 22, 2020, Allen pleaded guilty to failure to register as a sex offender and failure to update registration in violation of 18 U.S.C. § 2250(a) and 34 U.S.C. § 20913. Dkt. No. 1:20-cr-00328-JB, Doc. 38. Sentencing is currently set for July 8, 2021. *Id*., Doc. 40 ("NOTICE of Sentencing Hearing set for 7/8/2021 at 01:30 PM in Albuquerque - 460 Vermejo Courtroom before District Judge James O. Browning").

Magistrate Judge Yarbrough ordered Allen detained pending trial, concluding that the Government proved (1) "[b]y clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" and (2) "[b]y a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." *Id*., Doc. 12 (Order of Detention). Additionally, Judge Yarbrough made the following findings: weight of evidence against the defendant is strong; prior criminal history; participation in criminal activity while on probation, parole, or supervision; and history of violence or use of weapons. *Id*. at 2.

*Allen contracted COVID-19 in July 2020 and has since recovered.* Pet., Ex. 7 ¶ 4. Allen has not filed any COVID-19–related grievances. *See* Jackson Decl. ¶¶ 141-44.

    **6. Martin Perea**

A federal grand jury charged Perea with production of a visual depiction of a minor engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2251(a), (e), and 2256. *See* Dkt. No. 1:15-cr-03052-WJ, Doc. 15 (Indictment).

On August 6, 2015, Judge Yarbrough ordered Perea detained pending trial. *Id*., Doc. 11 (*Stipulated* Order of Detention). The parties then had several skirmishes over Perea's competency to stand trial. Ultimately, this Court deemed Perea competent, and he challenged that finding via

an interlocutory appeal, which was dismissed for lack of jurisdiction by the Tenth Circuit. *See United States v. Perea*, 977 F.3d 1297, 1299 (10th Cir. 2020). Perea is currently awaiting trial.

Perea filed a motion for release that this Court denied in December 2015, Dkt. No. 1:15-cr-03052-WJ, Doc. 30, but the docket does not reflect any motions for relief under the Bail Reform Act since then. *Perea contracted coronavirus on July 18, 2020, and recovered without complications*. Ivens Decl. ¶ 84.

### 7. Orin Kristich

On October 23, 2020, Kristich pleaded guilty to coercion and enticement of a thirteen-year old girl in violation of 18 U.S.C. § 2422(a). Dkt. No. 1:18-cr-02635-WJ, Doc. 54 (Plea Agreement). Sentencing is currently set for July 7, 2021. *Id.*, Doc. 72.

On August 16, 2018, Judge Ritter ordered Kristich detained pending trial based on his stipulation to detention. *Id.*, Doc. 15. *In July 2020 Kristich contracted COVID-19* and alleges that he has been suffering from shortness of breath ever since. Pet., Ex. 9 ¶ 4. The criminal docket does not reflect any motions for relief under the Bail Reform Act.

## II. ANALYSIS[7]

As alluded to above, Respondents deploy several defenses, both procedural and substantive, to impede Petitioners' attacks on CCCC's safety protocols. However, to short circuit a regurgitation of every argument and response proffered in the briefing, the Court will address

---

[7] Additionally, the Petition improperly amounts to another bite at the apple for Petitioners Wahhaj, Von Rotz, and Simsovic. Federal magistrate judges have already denied these three Petitioners' COVID-related requests for pre-trial release and affirmed those orders of detention on reconsideration. Similarly, this Court denied Von Rotz's post-conviction coronavirus-related request for compassionate release. As the Government correctly argues, all pre-trial Petitioners can challenge their detention orders under 18 U.S.C. § 3145 and all post-conviction Petitioners can move for compassionate release under 18 U.S.C. § 3582. Clearly, those are the appropriate avenues for COVID-19 related release requests and should be made individually in each criminal case, not asserted in a civil case through an "enlargement" argument.

only the two mountain sized roadblocks that derail this Petition at the outset: standing and mootness.

### A. Standing

Petitioners Martinez, Wahhaj, Von Rotz, Allen, Perea, and Kristich all contracted COVID-19 prior to the commencement of this action. Although both parties frame this prior infection issue as one of mootness, the Court concludes that the Respondents' challenge is properly characterized as an attack on standing. To that end, this cause of action is not justiciable as to these six Petitioners.

Standing is determined "as of the commencement of suit . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005) (except for mootness, standing is determined "as of the filing of the complaint"). Standing has three requirements: injury in fact, causation, and redressability. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) ("First, the plaintiff must have suffered an 'injury in fact' . . . [ ] Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be 'fairly traceable' to the defendant, and not the result of the independent action of some third party. [ ] Finally, it must be likely, not merely speculative, that a favorable judgment will redress the [petitioners] injury.") (citation omitted).

Here, even accepting that Martinez, Wahhaj, Von Rotz, Allen, Perea, and Kristich suffered actual injuries caused by Respondents, a favorable judgment will not redress those injuries. To illustrate, on December 16, 2020, Petitioners filed the Petition, requesting the following coronavirus-related relief: (1) release, (2) a declaration that CCCC's policies violate the Constitution, and (3) various injunctive relief, ranging from the appointment of a special master to a request that this Court dictate how CCCC must operate on a daily basis. *See* Pet. ¶ 195. However,

prior to December 16, 2020, these six Petitioners had already contracted and recovered from COVID-19, the very thing from which they seek protection. Specifically, (1) Kristich, Allen, Perea, and Von Rotz contracted COVID-19 in July 2020, approximately five months before the Petition was filed; (2) Wahhaj was infected in August, approximately four months before the Petition was filed; and (3) Martinez tested positive on December 3, 2020, approximately two weeks before the Petition was filed. Therefore, a judgment in these Petitioners' favor would be meaningless. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance.").[8]

Stated another way, neither release, a declaration, injunction, nor the increased availability of hand sanitizer, masks, testing, cleaning supplies, or the implementation of any CDC guidance will mitigate these Petitioners' risk of infection (or reinfection)[9] such that they have standing. *See, e.g., Rodas Godinez v. U.S. Immigration & Customs Enf't*, 2020 WL 3402059, at *3 (D.N.M. June 19, 2020) (holding that habeas petition was moot after the petitioner contracted COVID-19, notwithstanding the risk of contracting it again); *Engelund v. Doll*, 2020 WL 1974389, at *1 n.2 (M.D. Pa. Apr. 24, 2020) (noting that claim of petitioner who contracted COVID-19 was moot

---

[8] *See also Lasting immunity found after recovery from COVID-19* (published January 26, 2021) ("The research was funded in part by NIH's National Institute of Allergy and Infectious Diseases (NIAID) and National Cancer Institute (NCI) . . . The researchers found . . . [a]ntibodies against the spike protein of SARS-CoV-2 . . . were found in 98% of participants one month after symptom onset . . . promisingly, their levels remained fairly stable over time, declining only modestly at 6 to 8 months after infection.") ("95% of the people had at least 3 out of 5 immune-system components that could recognize SARS-CoV-2 up to 8 months after infection."), available at https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19.

[9] *See COVID-19 reinfection rate less than 1 percent for those with severe illness, study finds* (published June 15, 2021) ("63 of the 9,119 patients (0.7%) with *severe COVID-19 infection contracted* the virus a second time), available at https://www.sciencedaily.com/releases/2021/06/210615132103.htm. Clearly, the possibility of reinfection is too speculative to establish Article III standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending.").

11

because "the Court is no longer able to grant the requested relief—release from custody to avoid exposure to COVID-19" (internal quotation marks omitted)). The Petition, with respect to Martinez, Wahhaj, Von Rotz, Allen, Perea, and Kristich, is therefore dismissed with prejudice.

### B. Mootness

Irrespective of standing, Martinez, Simsovic, and Von Rotz's claims are moot. A plaintiff must have a "personal stake in the outcome" of the lawsuit at all stages of the case. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotation omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the [action] is filed." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 67 (1997) (quotations omitted). "If, during the pendency of the case, circumstances change such that [a party's] legally cognizable interest in a case is extinguished, the case is moot, and dismissal may be required." *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009) (quotations omitted); *see also Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) ("The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction.") (citation omitted).

As stated above, Martinez received a sentenced of time served, and Simsovic and Von Rotz now reside in the custody of the BOP at facilities separate and apart from CCCC. At the risk of stating the obvious, Martinez, Simsovic, and Von Rotz are no longer housed at CCCC nor in the custody of the U.S Marshal's Service, and with respect to Simsovic and Von Rotz, they no longer reside in the district of New Mexico. Accordingly, neither Martinez, Simsovic, nor Von Rotz have continuing cognizable interests in the claims against Respondents.

### C. The Vaccine's Impact on Justiciability

Furthermore, Von Rotz has refused the vaccine, i.e., the epitome of protection against the

virus absent natural immunity. A refusal itself moots this action.[10] *See, e.g., United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Lohmeier*, 2021 WL 365773, at *2 (N.D. Ill. Feb. 3, 2021) ("In declining vaccination (twice), Mr. Lohmeier declined the opportunity to reduce his risk exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *United States v. Gonzalez Zambrano*, 2021 WL 248592 (N.D. Iowa Jan. 25, 2021) (denied based on 3553(a) factors, but states: "It would be paradoxical to endorse a system whereby a defendant could [proffer] extraordinary and compelling circumstances for compassionate release" by refusing "health care [offered] to them").

Refusal notwithstanding, the mere availability of the vaccine at CCCC also moots this action (and strips standing from all detainees for all future risk-based coronavirus actions),[11] given that this lawsuit is premised entirely on COVID-19 exposure. *See Vaccine Rollout continues in New Mexico* (updated January 12, 2021) ("The vaccine rollout is two-phase and Phase 1 was broken down into 1A, 1B and 1C . . . Phase 1A includes . . . staff . . . [of] prisons and jails . . . inmates are part of Phase 1B");[12] *see also Inmates before the elderly: Anger over vaccine rollout*

---

[10] Neither Plaintiffs nor the proposed class contest the propriety of the vaccine.
[11] For example, because of the vaccine, all individuals not yet detained will not be able to establish any of the three standing elements. Given that they already had access to the vaccine prior to detention, detainees will not be able to demonstrate an injury and causation will clearly fall on them. Lastly, no court could (or would) issue a judgment that would cure a detainee's pre-detention failure to inoculate.
[12] Available at https://www.koat.com/article/vaccine-rollout-continues-in-new-mexico/35183371#.

(updated January 14, 2021) ("People over 75-years-old and those living in congregate settings are both in the same phase, 1B, to get vaccinated");[13] *see also New Mexico Department of Corrections Press Release* (published May 12, 2021) ("The New Mexico Corrections Department announced on Wednesday that 51% of the inmate population and 83% of staff working in prison facilities have received the COVID-19 vaccine . . . NMCD's goal is to have 100% of interested inmates receive a vaccination by June 1st");[14] *see also COVID-19 Vaccine Implementation* (last visited 6/16/2021) ("The BOP has received 192,596 doses and administered 190,150 doses of the COVID-19 vaccine.").[15]

In fact, every time a staff member, or pre-trial detainee, or prisoner is vaccinated, the overall risk of outbreak at CCCC decreases. Approaching this issue pragmatically, rather than through a clouded political lens, the vaccine must smother all attempts by prisoners or pre-trial detainees to request COVID-19-related relief based upon the theory that the risk of infection violates the constitution; persons in custody who refuse the vaccine are now imperiled solely as a result of their own free will and not because a detention center allegedly offended the Fifth, Eighth, and Fourteenth Amendments by failing to sufficiently implement prophylactic measures. *See, e.g., Prevention and Attenuation of COVID-19 by BNT162b2 and mRNA-1273 Vaccines* (91% risk reduction for fully vaccinated and 81% for partially vaccinated) (posted in preprint on June 3, 2021);[16] *Ensuring COVID-19 Vaccines Work* (updated May 10, 2021);[17] *see also CDC COVID-19 Vaccine Effectiveness Research*.[18] Although prisoners and pre-trial detainees are well within

---

[13] Available at https://www.koat.com/article/inmates-before-the-elderly-anger-over-vaccine-rollout/35208093.
[14] Available at https://cd.nm.gov/wp-content/uploads/2021/05/Vaccine-Update.pdf.
[15] Available at https://www.bop.gov/coronavirus/index.jsp.
[16] Available at https://www.medrxiv.org/content/10.1101/2021.06.01.21257987v2
[17] Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html#Research1.
[18] Available at https://www.cdc.gov/vaccines/covid-19/effectiveness-research/protocols.html.

their rights to decline the vaccine, they cannot have it both ways. To be plain, this Court will not reward a prisoner with release, a declaration, or an injunction for refusing inoculation. Accordingly, these claims are moot if for no other reason than the vaccine's availability. *See Vaccine Supplies Eclipse Demand in New Mexico* (published on June 15, 2021) ("Health officials have confirmed to The Associated Press that New Mexico's inventory includes nearly 493,000 doses that are being stored in freezers around the state.").[19]

Nonetheless, in a strained attempt to overcome the justiciability bar, Petitioners maintain that the deficiencies at CCCC are capable of being repeated:

> Respondents have not met the stringent and heavy burden of demonstrating that their challenged conduct has permanently ceased. First, there is nothing in the record that demonstrates that these measures and policies are permanent. To the contrary, according to Petitioners, the cleaning supplies that had been temporarily made available at CCCC are now being rationed. The hygiene supplies that had been temporarily made available to inmates are now being reduced. At their discretion, Respondents could alter or abandon these preventative measures and policies and based on Petitioners [sic] current experiences the alteration of preventive measures has begun to take shape. Without assurance that the preventative measures and policies are permanent, Petitioners are at risk continued injury and Respondents have not reasonably foreclosed a chance of recurrence of their damaging conduct. Secondly, the supposed preventative measures and policies implemented by CCCC do not fully comport with the relief sought by Petitioners. Petitioners request enlargement of confinement and release. The preventative measures and policies touted by Respondents do not provide such relief. Since Respondents have not established with assurance that there is no reasonable expectation that the alleged conduct will recur and because their preventative measures and policies do not fully comport with the relief sought by Petitioners, this petition is not moot.

Reply 18-19.[20] As illustrated throughout the entirety of this Memorandum Opinion and Order,

---

[19] Available at https://www.usnews.com/news/best-states/new-mexico/articles/2021-06-14/new-mexico-offering-100-incentives-to-et-fully-vaccinated; see also https://www.kob.com/albuquerque-news/vaccine-supplies-eclipse-demand-in-new-mexico/6142392/.

[20] For obvious reasons, this Court will not recognize a "re-occurring" or "ongoing" pandemic exception to the mootness doctrine, which is essentially what Petitioners request. To be clear, the protocols implemented at CCCC (and all detention facilities) are not (and should not be considered) permanent. The pandemic's longevity is not further lengthened by a detainee's inability to return to normalcy nor are the Constitution's guarantees further enhanced.

this Country and this State are in the waning days of the pandemic. Petitioners are grasping at straws and COVID-19 will not offer Petitioners the get-out-of-jail remedy they seek.

## III. CONCLUSION

Petitioners have asserted non-justiciable claims, making all pending motions moot. IT IS THEREFORE ORDERED that

> (1) Petitioners' Class Action Petition for Writ of Habeas Corpus and Injunctive and Declaratory Relief Pursuant to 28 U.S.C. § 2241, 42 U.S.C. § 1983 (Doc. 1) is DISMISSED WITH PREJUDICE;
>
> (2) Petitioners' Motion for Class Certification (Doc. 2) is DENIED as MOOT; and
>
> (3) Respondent Warden Rosa's Motion to Dismiss (Doc. 16) is DENIED as MOOT.

This Memorandum Opinion and Order disposes of this case in its entirety. A Rule 58 Judgment shall issue separately.

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE